### 15214.   WHIDDON *v.* THE STATE.

1. Where the defendant in a criminal case puts his character in issue, the direct examination of the witnesses offered to establish his good character must be confined to his general reputation.  His counsel will not be permitted to inquire as to specific acts or transactions of the accused. *Moulder* v. *State,* 9 *Ga. App.* 438 (71 S. E. 682); *Alexander* v. *State,* 8 *Ga. App.* 531 (3) (69 S. E. 917).  Under this ruling the court did not err in the instant case in excluding testimony (elicited by the defendant's counsel on the direct examination of a character witness for the defendant) that the accused was a member and a deacon "of the church at Hickory Springs."  Furthermore, it appears from the approved brief of the evidence that another witness, the pastor of the "Hickory Springs

Church," testified that the accused was a member and deacon of that church, and that the evidence of this witness went to the jury.

2. In the state of the record it does not clearly appear in the second ground of the amendment to the motion for a new trial (complaining of the exclusion of certain testimony) what particular part of the testimony therein set out was excluded. Moreover, substantially all of the testimony thus set forth appears in the approved brief of evidence transmitted to this court. This ground is, therefore, without substantial merit.

3. The charge of the court was full and fair, and, under the particular facts of the case, was not subject to any of the exceptions taken.

4. The verdict of assault and battery was authorized by the evidence.

DECIDED MARCH 6, 1924.

Conviction of assault and battery; from Tift superior court— Judge Eve. November 19, 1923.

*J. S. Ridgdill, C. A. Christian, Perry & Tipton,* for plaintiff in error. *R. S. Foy, solicitor-general,* contra.

BROYLES, C. J. In our judgment the fourth headnote alone requires elaboration. The accused, a married man and a grandfather, was charged with an assault with intent to rape, and was found guilty of an assault and battery. His alleged victim was an orphan girl, eleven years old, living with her grandmother, who resided only a short distance from the defendant's home. Upon the trial the girl testified that her grandmother sent her one morning, about nine o'clock, to the defendant's home to buy some onions; that when she reached his house he invited her in, and that while they were in the hall "he told me to let him see how heavy I was, and he picked me up and lifted me and put on a chair, and then he put me in his lap and rubbed his hand all down here on my private parts and patted me like that, and after awhile he told me to come on and go in the room, and I went with him and he got a quilt and put it on the floor and told me to lie down, and I did, and he then opened his pants and pulled out his old works, and he first shook it and then put it inside me. He shook it first and got to pushing and pulling as far as he could, and he ask me did I love candy, and ask me did it hurt, and I told him 'Yes,' it hurt me. I was afraid he would kill me; and he was kissing me all between my breasts, and directly he got up and I did too, and he put the quilt up and went to the shelf and got some candy and gave it to me, and he went out to his garden and got the onions, and while we were out there he told me not to tell the rest of the girls about

it, and come back again and get some honey, and after I left I went on home and told grandma about it. When he laid me down he pulled up my clothes, and took out his private parts and put it into my private parts. . . When he gave me the piece of candy I ate it right then. I was excited and scared when I took the candy. I didn't know what he was going to do at first. I thought he might kill me after he done it is the reason I didn't scream. Nobody told me to say that, he was not mad with me and did not talk rough to me. I was just scared and did not know what he might do. . . I told grandmother everything, I told her just what he done. I was scared a little bit then, I was not crying, I did not cry over at my house, I did not cry over at Mr. Whiddon's house, nobody told me to cry on the stand. . . After I told my grandmother what he done to me I changed my clothes. I changed them because they just didn't feel right, they were wet, they were uncomfortable, I wanted to change them. There was nobody at Mr. Whiddon's house but him."

The child's grandmother (apparently the only person who examined the child after the alleged assault), after testifying that she sent the girl to the defendant's house to buy a dime's worth of onions, and that she returned in twenty-five or thirty minutes and told her about the defendant's assault, testified as follows: "I took her into the room and told her to lay down and let me see, and I examined that child. I found her bruised and nervous, she was nervous and there were marks on her place here. . . I found bruises and marks on her, proving to me that she had not lied to me, and that she had come in contact with something, the marks were there, gentlemen, unmistakably, and I tell you for all eternity the marks were there, his filth was on that child, unmistakably so. . . There was filth on her private parts." A witness for the defendant testified that two or three days after the alleged assault he asked the child's grandmother "if the child was bruised, and she said she was not, nothing except some little irritation, and she thought that was from fingers."

While the above-stated evidence amply authorized a finding that an assault with intent to rape had been committed, it did not demand such a verdict, and the verdict of assault and battery was not contrary to law and the evidence. The jury were authorized to find that this little eleven-year-old girl was totally ignorant and

innocent as to sexual intercourse, and that she was mistaken as to the penetration of her private parts. They were also authorized to find, under all the particular facts of the case, that the defendant assaulted her without any intention of actually having sexual intercourse with her, but with the lascivious desire of rubbing his private parts against hers and satisfying his animal passions by provoking a seminal discharge. See, in this connection, *Dalton* v. *State*, 27 *Ga. App.* 288 (108 S. E. 122), and *Byrd* v. *State*, 28 *Ga. App.* 504 (111 S. E. 924).

   *Judgment affirmed. Luke and Bloodworth, JJ., concur.*